UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARTHUR W. TURNER and
DARLENE K. TURNER,

       Appellants,

   -v-                                      3:17-CV-679

CIT BANK, N.A.,

       Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| ORVILLE & MCDONALD LAW, P.C.<br>Attorneys for Appellants<br>30 Riverside Drive<br>Binghamton, NY 13905 | PETER A. ORVILLE, ESQ. |
| BRYAN CAVE LLP<br>Attorneys for Appellee<br>1290 Avenue of the Americas, 33rd Floor<br>New York, NY 10104 | NAFIZ CEKIRGE, ESQ.<br>LAITH J. HAMDAN, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

**I. INTRODUCTION**

    Appellants Arthur W. Turner and Darlene K. Turner (collectively the "Turners" or "appellants") seek reversal of a June 7, 2017 Order (the "June 7 Order") issued by United States Bankruptcy Judge Diane Davis that partially denied appellants' motion for contempt sanctions against appellee CIT Bank, N.A. ("CIT Bank" or "appellee"). The appeal has been fully briefed and will be decided on the basis of the submissions without oral argument.

## II. **BACKGROUND**[1]

On September 13, 2006, the Turners jointly filed a Chapter 7 bankruptcy petition in the Northern District of New York.  Appellants' bankruptcy case was later converted to a Chapter 13 proceeding on October 3, 2008.

On March 9, 2009, IndyMac Federal Bank, F.S.B. ("IndyMac") filed a proof of claim in the Turners' bankruptcy proceeding to protect a mortgage it held on appellants' primary residence at 93 Chestnut Street in Binghamton, New York.  Notably, however, appellants had indicated in an attachment to their initial bankruptcy filing that the IndyMac mortgage was not perfected.

In response to IndyMac's proof of claim, the bankruptcy trustee instituted a so-called adversary proceeding to request that the bankruptcy court declare IndyMac's secured interest in the Chestnut Street property be deemed wholly unsecured.  At some point during the pendency of these proceedings, CIT Bank—formerly just the servicer of the Turner's mortgage loan—became the holder and owner of IndyMac's claim on appellants' property.

On March 24, 2010, the bankruptcy court issued an Order granting the bankruptcy trustee's requested relief.  Armed with this favorable ruling, the Turners proposed a Chapter 13 plan in which they would, inter alia, take out a new mortgage on the Chestnut Street residence to fund certain payments to the bankruptcy trustee in satisfaction of their debts.  The bankruptcy court confirmed appellees' proposal on December 28, 2010.

On September 23, 2015, nearly five years later, the bankruptcy court entered an Order permitting the bankruptcy trustee to seek to convert the Turner's Chapter 13 case back into a

---

[1] The background recounted here is drawn from the parties' submissions and a review of the portions of the record designated on appeal.

Chapter 7 liquidation proceeding unless appellants completed their Chapter 13 plan within ninety days. Thereafter, appellants worked with a broker to find a bank that would grant them a mortgage on the Chestnut Street property.

On October 5, 2015, working against the ninety-day deadline imposed by the bankruptcy court, the Turners received a mortgage loan commitment for the Chestnut Street property from American Financial Resources, Inc. ("AFS"). However, within days of receiving this commitment letter, appellants allege they began to receive correspondence from CIT Bank falsely claiming they were in default on their mortgage; that is, the old IndyMac mortgage that the bankruptcy court had declared wholly unsecured back on March 24, 2010. According to appellants, AFS backed out once it learned that the Chestnut Street property was the subject of an attempted foreclosure.

On April 11, 2017, the Turners moved the bankruptcy court for an order of contempt and an award of damages for emotional distress and attorney's fees from CIT Bank on the basis of appellee's alleged violation of the automatic stay provision of the Bankruptcy Code. Appellants attached to their contempt motion as Exhibits C and D certain mortgage statements and written demands for payments they alleged were improperly sent by appellee. Appellants further alleged "upon information and belief" that AFS had refused to grant them a new mortgage because appellee had falsely and/or improperly reported a foreclosure action against the Chestnut Street property. Appellee did not respond to the contempt motion.

On May 18, 2017, the bankruptcy court held a hearing on the Turner's contempt motion. During the hearing, Judge Davis indicated that she would be granting appellants' motion with respect to the documents attached as Exhibit C because they lacked certain

disclaimers indicating that they were for "informational purposes only." However, Judge Davis refused to grant the contempt motion with respect to the documents attached as Exhibit D because those documents did in fact contain an informational disclaimer. Finally, the bankruptcy court indicated that it would not make a finding of contempt based on appellee's alleged false reporting of a foreclosure. Instead, based on the incredibly lengthy nine-year delay, the bankruptcy court determined that it would enter an Order reconverting appellants' bankruptcy case to Chapter 7. The bankruptcy court's findings on appellants' contempt motion were memorialized in the June 7 Order. This appeal followed.

## III. DISCUSSION[2]

The Turners argue the bankruptcy court applied the wrong standards when it denied in part their motion to hold CIT Bank in contempt. Among other things, appellants argue that the bankruptcy court should have granted their request for sanctions in full because appellee never responded to their motion and/or the court should have held an evidentiary hearing on the allegations in their contempt filing. Appellee responds that the bankruptcy court acted well within the scope of its authority in partially denying appellants' request for sanctions.

Upon the filing of a bankruptcy petition, the "automatic stay" provision of the Bankruptcy Code operates to halt virtually any proceedings against "property" of the bankruptcy estate. 11 U.S.C. § 362(a); see also, e.g., In re Prusan, 495 B.R. 203, 206 (Bankr. E.D.N.Y. 2010) ("The automatic stay is triggered the instant a bankruptcy petition is filed."). Subject to certain exceptions, "property of the estate" is defined broadly to include all

---

[2] A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" issued by a bankruptcy court sitting in the same judicial district. 28 U.S.C. § 158(a). "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." In re Charter Commc'n, Inc., 691 F.3d 476, 482-83 (2d Cir. 2012).

legal or equitable interests of the debtor in property as of the commencement of the case.  11 U.S.C. § 541.

The Bankruptcy Code further provides that "an individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1). Accordingly, "[t]he party seeking damages for [a] violation of the automatic stay must prove the following elements:  (1) that a bankruptcy petition was filed, (2) that the debtor is an individual, (3) that the creditor received notice of the petition, (4) that the creditor's actions were in willful violation of the stay, and (5) that the debtor suffered damages."  In re Sullivan, 367 B.R. 54, 64-65 (Bankr. N.D.N.Y. 2007) (Gerling, J.) (quoting In re Wright, 328 B.R. 660, 663 (Bankr. E.D.N.Y. 2005)).

With the contours of this standard in mind, the bankruptcy court did not err in partially denying the Turner's contempt motion in the June 7 Order.  As is so often the case when a party appeals from a bankruptcy judge's ruling, appellants' challenge here amounts to an invitation for this Court to second-guess the bankruptcy court's decision-making about areas particularly within its sphere of competence—in this instance, whether a creditor's mailing of certain correspondence amounts to a willful violation of the automatic stay.  See, e.g., In re Bell, 2014 WL 6913509 at *3 (Bankr. N.D.N.Y. 2014) (Davis, J.) (citations omitted) (describing this issue as an area of bankruptcy law "where no bright-line rule exists").

The hearing on the contempt motion reveals that Judge Davis reviewed the evidentiary material submitted by the Turners in support of their claim that CIT Bank's correspondence violated the automatic stay.  As the bankruptcy court recognized on the record, informational mailings are generally not considered automatic stay violations.  In re

Bell, 2014 WL 6913509 at *3 (observing that "correspondence that is informational in nature does not violate the automatic stay" unless it is provided in a manner "which is threatening, harassing or coercive").

Applying that general standard, the bankruptcy court indicated during the May 18 hearing that it would partially grant the Turner's contempt motion on the basis that the materials attached as Exhibit C lacked a disclaimer indicating that they were for "informational purposes only." However, the bankruptcy court refused to entertain appellant's further claimed violation because it was made solely "on information and belief."

The Turners contend this refusal amounts to error, and their memorandum of law in support of this appeal spends several pages discussing pleading standards under the Federal Rules of Civil Procedure. But although appellants' brief goes on to claim they should have been provided by the bankruptcy court with an opportunity to "buttress the assertions at a hearing on the motion," they do not offer any indication about what might have been developed at an evidentiary hearing. And a review of the transcript of the May 18 hearings bears no indication about what appellants might have sought to prove at a further hearing on the motion, either.

Notably, "[t]he policy of section 362[k], to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a 'cottage industry' built around satellite fee litigation." In re Prusan, 495 B.R. at 208 (quoting In re Robinson, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998)). Under these circumstances, and in particular the absence of some clear indication in the existing record why an evidentiary hearing might have been warranted, there was nothing improper about the bankruptcy court's

refusal to hold *further* proceedings before disposing of appellants' contempt motion.[3]

## IV. CONCLUSION

Therefore, it is

ORDERED that

1. The June 7, 2017 Order is AFFIRMED; and

2. The Turner's appeal is DENIED.

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: May 16, 2018
       Utica, New York.

---

[3] The majority of the May 18, 2017 hearing appears devoted to a largely inscrutable colloquy between the parties and the bankruptcy court about why, exactly, appellants' case had dragged on for so many years without a resolution.